**ZENO B. BAUCUS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Avenue North, Suite 3200**
**Billings, Montana 59101**
**Phone:   (406) 657-6101**
**FAX:       (406) 657-6989**
**Email:    Zeno.Baucus@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 23-23-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **SENTENCING MEMORANDUM** |
| **RICHARD WILLIAM BROOKS,** | |
| **Defendant.** | |

The United States of America, through Assistant United States Attorney

Zeno B. Baucus, provides this sentencing memorandum for purpose of aiding the

Court in advance of sentencing the defendant, Richard Brooks.

1

**OVERVIEW AND PROCEDURAL POSTURE**

Brooks entered a plea of guilty to one count of wire fraud, pursuant to 18 U.S.C. § 1343. PSR ¶ 3. Under the terms of the plea agreement, the United States intends to dismiss the remaining counts and recommend a sentence of probation at sentencing, currently scheduled for May 30, 2024. PSR ¶ 5. The PSR determined that Brooks is a criminal history category of I and that his recommended guideline range is 33 to 41 months of imprisonment. PSR ¶ 68. Restitution is requested and is uncontested. There are no objections to the PSR.

**OFFENSE CONDUCT**

Dating as far back as 2016, Brooks orchestrated a scheme to defraud individuals out of significant sums of money. Contending that he fell on "hard times," PSR ¶ 15, Brooks, often using third parties as intermediaries, advanced the false narrative that his daughter-in-law was scheduled to receive a large inheritance but for legal and court costs that were required to release it. PSR ¶ 9. As such, Brooks mislead investors. He deceptively assured multiple victims, including John Munro and Lynette Myrstol,[1] that if they provided Brooks with money on an expedited timeline, he would return their funds in addition to a premium of between 25% and 100% percent. PSR ¶ 12.

---

[1] Publicly identifying Munro and Myrstrol with their permission. It is the understanding of the United States that at least one of them plans to address the Court at sentencing.

Brooks, knowing these representations to be false, insisted that his victims pay him in cash.  PSR ¶ 12.  When pressed by his victims as to explanations on non-payment or supporting documentation, Brooks demurred or lied again.  He claimed, for example, that the matter regarding the inheritance was under seal and, as such, he was unable to provide any documentation.  PSR ¶ 12.  This scheme lasted for years and, in February 2021, law enforcement interviewed Brooks.  He contended that he intended to pay back this money – which he never did – and represented that he was soon to receive a settlement in connection to his exposure to Agent Orange and claimed to have documentation that would support his theory that these were temporary loans.  PSR ¶ 15.  When law enforcement followed-up concerning this documentation, Brooks terminated the communication and never provided any materials to support his position.  All told and based largely on financial records and a journal maintained by John Munro, the loss amount attributable to Books is over $716,000.  PSR ¶ 16.

## **RESTITUTION**

The Mandatory Victims Restitution Act provides that the Court "shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1).  The Court must order restitution to each victim for the full amount of loss. 18 U.S.C. § 3664(f)(1)(A).

Moreover, Brooks agreed to pay complete restitution for the full losses he caused by his criminal conduct to 18 U.S.C. § 3663(a)(3).  PSR ¶ 5, Plea ¶ 11. The United States requests that the Court order full restitution in the amount of $722,808.00 and requests that the Court impose a relatively aggressive payment schedule. PSR ¶ 78.

Based on the financial information Brooks provided to USPO, Brooks enjoys a monthly cash flow of approximately $4,800 per month. (PSR ¶ 65.) This amount is consistent with the partial bank statements provided to USPO[2], which show significant amounts of cash withdrawn—totaling $15,425 for part of December 2023, and February, March, and April 2024. Brooks reported to USPO that the money was given to his son, Robert, for living expenses. However, Robert is 47 years old and gainfully employed at the refinery in Laurel.  PSR ¶ 47. Brooks must repay his victims and cannot funnel money to insiders or family at the continued expense of his victims.

The $4,800 monthly cash flow determined by USPO is after payment of his expenses—including $720 to service debt for he and his spouse and $500 for payment of his grandson's vehicle.  PSR ¶ 65. Brooks cannot divert his disposable income to family members in detriment of his victims' right to full and timely

---

[2] In his Plea Agreement ¶ 12, Brooks authorized USPO to release to the U.S. Attorney's Office all documents and financial information provided by or obtained about Brooks.  Doc. 22, PSR ¶ 6.

restitution; considering the $500 he is paying for his grandson's vehicle; Brooks has **available disposable income of approximately $5,300 per month**.

Given Brooks' age and the substantial amount of restitution owed to individual victims, an aggressive payment plan ordered by the Court is essential. The CVRA also instructs that the "the court <u>shall</u> ensure" that the crime victims are afforded these rights and that the reasons denying any such relief "shall be clearly stated on the record." 18 U.S.C. § 3771(b)(1).

Accordingly, the United States requests that the Court exercise its authority under 18 U.S.C. § 3572(d) and order Brooks to pay no less than $5,000 per month to compensate Brooks' victims for, and further order Brooks to notify the Court of any material change in his economic circumstances, specifically including the receipt of or notice of any right to receive any unexpected property including but not limited to all inheritances; gifts; winnings or prizes from lotteries, gambling, contests, or the like; any settlements or judgments; any cash, funds, or property worth $1,000 or more.

## SENTENCING ARGUMENT

The district court's sentencing duty is to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to

protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)).

As it relates to the type of crime for which the defendant is scheduled to be sentenced, concern that "white-collar offenders" received special treatment and "frequently do not receive sentences that reflect the seriousness of their offenses" was among the motivations for the Sentencing Reform Act that gave rise to the Sentencing Guidelines. S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3260.  Here, given the myriad of information relating to this defendant, a sentence of probation adequately accounts for the §3553(a) factors and should provide an opportunity for Brooks to ensure full restitution is made.

The United States does not dispute that Brooks, 78 years of age, presents as a unique defendant for this Court.  He served in the military, has a relatively benign criminal history, and otherwise does not present as someone that would engage in the criminal conduct for which he has pled guilty.  First, it is important to recognize that his adjusted offense level of 23 is significant for someone that pled guilty to a single count of wire fraud that that is because his conduct was expansive and serious.  With a specific offense characteristic of +14 for the loss involved and a +2 for the substantial hardship that he inflicted, Brooks's scheme

6

was of significant consequence.  PSR ¶¶ 24-25.  One only has to refer to the victim impact statement submitted by Mr. John Munro, who notes that he "lost [his] business of ten years because of Richard Brooks's scheme…"  PSR ¶ 18.  Brooks's created victims.  Victims that lost everything and victims that will have to endure what they went through at the hands of Richard Brooks for the rest of their life.

Following the entry of judgment Richard Brooks will be a federal felon.  He, presumably, will be subject to multiple conditions that will serve a number of sentencing purposes.  Among those will be the requirement to make full restitution to his victims, as he has agreed to do in the plea agreement.  Given the totality of this case and the need to make timely restitution, as well as pursuant to terms of the plea agreement, the United States respectfully asks for a sentence of probation.

DATED this 15th day of May, 2024

JESSE A. LASLOVICH
United States Attorney

*/s/ Zeno B. Baucus*
ZENO B. BAUCUS
Assistant United States Attorney

7

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), the attached United States' Sentencing Memorandum is proportionately spaced, has a typeface of 14 points or more, and has a body containing 1,367 words.

/s/ *Zeno B. Baucus*
ZENO B. BAUCUS
Assistant United States Attorney